THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, vs.
JANNETTA SHOLEM et al. Appellees.

*Opinion filed February 19, 1909.*

1. APPEALS AND ERRORS—*inheritance tax cases are properly appealed directly to Supreme Court.* In view of sections 21½ and 11½, added to the Inheritance Tax law in 1901, (Laws of 1901, p. 271,) inheritance tax cases are properly appealed directly to the Supreme Court from the county court, regardless of the question whether the revenue is directly involved.

2. SAME—*the People may appeal to county court from order of county judge.* Under section 11 of the Inheritance Tax act, providing that "any person or persons dissatisfied with the appraisement or assessment may appeal," the People may appeal to the county court from an order of the county judge approving the report of the appraiser and fixing the cash value of the estates and the taxes on the same.

3. SAME—*effect of provision of section 11 of Inheritance Tax law requiring bond.* The provision of section 11 of the Inheritance Tax law that appeals from the order of the county judge may be allowed to the county court "on paying or giving satisfactory security to the county judge," does not preclude the People from taking an appeal even though no bond can be required in such case.

APPEAL from the County Court of Edgar county; the Hon. WALTER S. LAMON, Judge, presiding.

W. H. STEAD, Attorney General, and WALTER V. AR-BUCKLE, (EMERY ANDREWS, of counsel,) for appellant:

Statutes giving the right of appeal should be construed liberally in furtherance of justice. Such an interpretation as will work a forfeiture of that right is not favored. 2 Lewis' Sutherland on Statutory Const. sec. 717.

When a literal enforcement of the statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt

constructions that will promote the ends of justice and avoid the absurdity. 2 Lewis' Sutherland on Statutory Const. 913; *Railroad Co.* v. *Chicago,* 173 Ill. 471; *Railroad Co.* v. *Illinois,* 146 U. S. 387; *People* v. *Chicago,* 152 Ill. 546.

SHEPHERD & TROGDON, J. K. LANHER, and H. S. TANNER, for appellees:

The Supreme Court has no jurisdiction in a direct appeal upon the ground that the construction of the statute is involved, where its validity has not been attacked. *Foote* v. *Lake County,* 198 Ill. 638; *State Board of Health* v. *People,* 181 id. 512.

In order to give the Supreme Court jurisdiction of a direct appeal from the trial court on the ground that the case relates to the revenue it must relate to the revenue directly, and not merely incidentally or remotely. *People* v. *Hendee,* 199 Ill. 55; *Wells* v. *Rogers,* 196 id. 292.

The general rules of statutory construction apply to the construction of statutes granting or taking away the right of appeal, and the intent of the legislature must control, regardless of the consequences. *Slingluff* v. *Weaver,* 66 Ohio St. 621.

In the enactments of legislative bodies, where "persons" are spoken of, no other than natural persons will be intended, unless it be absolutely necessary to give effect to some powers already conferred on artificial persons, and which it is necessary should be exercised to carry into effect the objects contemplated in their charters. *Blair* v. *Worley,* 1 Scam. 178; *Betts* v. *Menard,* Breese, 395.

It is well settled law that where the language of a statute is plain and its meaning obvious there is no room for judicial construction, and the courts cannot disregard the language of the statute but must enforce it as it is plainly written. *Railroad Co.* v. *Chicago,* 173 Ill. 471.

Mr. JUSTICE CARTER delivered the opinion of the court:

Jacob Sholem died testate in Paris, Illinois, March 1, 1907, leaving certain property. August 19, 1907, on petition of the Attorney General, the county judge of Edgar county appointed an appraiser to appraise the estate of said deceased under the Inheritance Tax law. After a brief hearing the appraiser declared the case closed and refused to take any further evidence. The appraiser thereupon made his report and filed it with the clerk of the county court on April 10, 1908. Thereafter, on April 24, the county judge entered an order approving the report of the appraiser and fixing the cash value of estates given to the beneficiaries and taxes on the same, as provided by section 11 of said Inheritance Tax law. (Hurd's Stat. 1908, p. 1822.) From this order the Attorney General prayed and was allowed an appeal to the county court of Edgar county. This appeal was perfected, and thereafter appellees made a motion in the county court to dismiss the appeal, for the reason that the State had no statutory right to appeal from the county judge to the county court under said Inheritance Tax law. This motion was allowed and the appeal dismissed, whereupon the Attorney General prayed and was allowed an appeal to this court.

The appellees contend that the county court improperly made an order, based on memoranda kept on the docket of the county judge, to file *nunc pro tunc* the appraiser's report. The question cannot be considered by us, as no cross-errors have been assigned by the appellees. *Kantzler* v. *Bensinger,* 214 Ill. 589; *Provart* v. *Harris,* 150 id. 40; *Expanded Metal Fireproofing Co.* v. *Boyce,* 233 id. 284.

Appellees further contend that the question of the right of the State to appeal from the order of the county judge to the county court does not directly involve revenue, and therefore this appeal should have been to the Appellate Court and not to the Supreme Court. By sections 21½

and 11½, which were made a part of the Inheritance Tax
law by amendment in 1901, it is plain that inheritance tax
cases are appealed directly to the Supreme Court from the
county court, regardless of whether revenue is directly in-
volved. The universal practice, as well before as since
these amendments were passed, has been to appeal such mat-
ters directly from the county court to the Supreme Court.
*Kochersperger* v. *Drake,* 167 Ill. 122; *Ayers* v. *Chicago
Title and Trust Co.* 187 id. 42; *Billings* v. *People,* 189 id.
472; *Walker* v. *People,* 192 id. 106; *Provident Hospital
and Training School* v. *People,* 198 id. 495; *People* v. *Mc-
Cormick,* 208 id. 437; *People* v. *Moir Estate,* 207 id. 180;
*Connell* v. *Crosby,* 210 id. 380; *Rosenthal* v. *People,* 211
id. 306; *Merrifield Estate* v. *People,* 212 id. 400; *In re
Estate of Speed,* 216 id. 23; *People* v. *Kelley,* 218 id. 509;
*In re Estate of Kingman,* 220 id. 563; *In re Estate of
Benton,* 234 id. 366.

The further and chief contention is, that the State has
no right of appeal from the order of the county judge to
the county court. Said section 11 of the Inheritance Tax
law, after providing for the appointment of the appraiser
and as to the method of finding and reporting the value of
the estate, continues: "From this report the said county·
judge shall forthwith assess and fix the then cash value of
all estates, annuities and life estates or terms of years grow-
ing out of said estate, and the tax to which the same is li-
able, and shall immediately give notice by mail to all parties
known to be interested therein. Any person or persons dis-
satisfied with the appraisement or assessment may appeal
therefrom to the county court of the proper county within
sixty days after the making and filing of such appraisement
or assessment on paying or giving security satisfactory to
the county judge to pay all costs, together with whatever
taxes shall be fixed by said court." This seems to have
been the only provision touching appeals in the law as it
stood when first enacted, in 1895. Said section 11 was

amended in 1901 but not in any way changing the portion quoted above. However, section 21½ was also added by amendment, in 1901. This section, after providing for finding out in the county court as to whether certain intestate property is subject to the tax, continues: "An adjudication by the county court, as herein provided, shall be conclusive as to the lien of the tax herein provided upon said property, subject to appeal to the Supreme Court of the State by the county treasurer, or Attorney General of the State, in behalf of the People, or by any party having an interest in said property." Previous to the insertion, by amendment, of section 21½ there was no provision in this statute permitting an appeal from the order of the county court fixing the tax. The entire act, including the said section 21½, must be construed together.

It is manifest that the People have a right to appeal from the order of the county court in all inheritance tax matters, but this right would be of little practical value unless the People also had a right to appeal from the order of the county judge to the county court. It is apparent from the entire act that it was the intention that the State, through certain public officials, should be represented at all stages of the proceedings in the assessment and collection of the inheritance tax, including the hearing before the appraiser. When the value has been fixed by the appraiser and his report approved by the county judge, even though the representatives of the People might be dissatisfied with the findings, if no appeal could be taken from the finding of the county judge to the county court there would be no method whereby the State might secure a review of the county judge's finding, and it would therefore, so far as the State was concerned, be final. Four of the cases cited above were appealed to this court by the People, and while the opinions in all those cases may not so show that fact, the records disclose that the appeals from the county judge to the county court were taken by the People; and while this

question of the right to appeal was not discussed in those cases, the fact that counsel did not raise that question and this court assumed jurisdiction is not without weight. Said section 11 does not say that only those "interested in the property" may pray an appeal, but that "any person or persons dissatisfied with the appraisement or assessment may appeal." This wording, we think, was intended to include all parties to the proceeding, including the Attorney General or any other proper representative of the public interest. Said section 21½, in providing for an appeal, names the county treasurer and the Attorney General on behalf of the People, and then continues, "or by any party having an interest in said property." Manifestly, the words referring to the appeal in said section 11 were intended to include other persons than those who had "an interest" in the property. The statute should be so construed as to give a sensible and intelligent meaning to every part and to avoid absurd and unjust consequences, (2 Lewis' Sutherland on Statutory Construction,—2d ed.—sec. 516.) Of two constructions, either of which is warranted by the words of an act, that is to be preferred which best harmonizes with the entire act. The intention is to be gathered from the necessity or reason of the enactment and the meaning of the words enlarged or restricted, according to the true intent. (*People* v. *City of Chicago,* 152 Ill. 546; 2 Lewis' Sutherland on Statutory Construction,—2d ed.—sec. 489.) Statutes giving the right to appeal should be liberally construed in furtherance of justice. A statute which was so framed that literally it is only available to one of the parties to review the proceedings should be so construed as to extend to the other party the same means for the correction of errors. The right to review should be held reciprocal and alike demandable by either party. (2 Lewis' Sutherland on Statutory Construction,—2d ed.—sec. 717.) The legislature has the power to regulate appeals and writs of error, but in so doing it has no right to discriminate between the

parties and allow to one party an appeal from an adverse decision and not allow it upon equal terms to the other. (*Hecker* v. *Illinois Central Railroad Co.* 231 Ill. 574; *Hayward* v. *Sencenbaugh,* 235 id. 580.)    If the legislature intended the provision in section 11 to permit an appeal only by the persons interested in the property of the estate assessed, then that provision, under these authorities, would be unconstitutional.

The further contention is made that the statute did not intend to give the State the right of appeal from the action of the county judge, because said section 11 provides that such appeals shall be allowed "on paying or giving security satisfactory to the county judge," etc., and that the State is not required, in appealing, to give bond.    We do not think the conclusion contended for follows.    Section 192 of the Revenue law, (Hurd's Stat. 1908, p. 1782,) which provides for appeals from the judgment of the county court in tax matters, provides that "the party praying an appeal" shall execute a bond to the People of the State of Illinois, with two or more sureties to be approved by the court. The practice in this State since the enactment of this section has been uniform to permit an appeal by the State and without requiring a bond.    By a fair construction of section 11, taken in connection with the entire Inheritance Tax law, it manifestly was intended to give to the People the right to appeal from the order of the county judge appraising or assessing the tax, to the county court.    This is in accord with the practice and settled rules of law.    Any other conclusion would be unnatural and unreasonable and tend to defeat justice.

The further contention of appellees that the order of appeal in question was from the finding of the county judge approving the appraiser's report, when it should have been from the finding of the county judge assessing and fixing the cash value of the estate, cannot be upheld.    The county judge by the same order approved both the appraiser's re-

port and fixed the cash value, and the appeal was plainly from the entire order. Furthermore, the appellees cannot raise this point as it was not raised before the trial court.

The order of the county court of Edgar county will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*